IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:25-CV-165-FL-BM

| | | |
|---|---|---|
| SANDRA ASHLEY,<br><br>Plaintiff,<br><br>v.<br><br>FRANK BISIGNANO,<br>Commissioner of Social Security,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **MEMORANDUM AND RECOMMENDATION** |

Plaintiff Sandra Ashley ("Plaintiff" or, in context, "Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the denial of her application for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI"). This matter is before the court on Plaintiff's brief [DE-14] ("Pl.'s brief") seeking judgment in her favor, Defendant's responsive brief [DE-16] ("Def.'s Brief") in opposition, and Plaintiff's reply brief [DE-17] ("Pl.'s Reply"). The parties have fully briefed this matter pursuant to the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g), and this case is ripe for adjudication. The briefs were referred to the undersigned magistrate judge for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1). Having reviewed and considered the record, the administrative transcript, the briefs submitted by the parties, and the applicable law, it is recommended that Plaintiff's brief [DE-14] be allowed, Defendant's brief [DE-16] be denied, and the case be remanded to the Commissioner for further proceedings consistent with the Memorandum and Recommendation.

## I. STATEMENT OF THE CASE

Plaintiff protectively filed applications for a period of disability, DIB, and SSI on January

24, 2020, alleging disability beginning October 21, 2019. Transcript of Proceedings ("Tr.") 121-22, 211-19. Her claim was denied initially. Tr. 93-122, 153-57. Plaintiff filed a request for reconsideration (Tr. 158-59), and was denied upon reconsideration on July 8, 2020 (Tr. 123-52, 160-68). On August 27, 2020, Plaintiff requested a hearing before the Administrative Law Judge ("ALJ"). Tr. 169-70. A hearing before ALJ Susan Preston ("ALJ Preston") was held on March 10, 2021, at which Plaintiff, unrepresented by counsel, and a vocational expert ("VE") appeared and testified. Tr. 56-92. On September 20, 2021, the ALJ issued a decision denying Plaintiff's request for benefits. Tr. 36-55. On December 1, 2021, Plaintiff requested a review of the ALJ's decision by the Appeals Council (Tr. 205-07) and submitted additional evidence as part of her request (Tr. 29-31, 34-35). After reviewing and incorporating the additional evidence into the record, the Appeals Council denied Plaintiff's request for review on May 5, 2022. Tr. 23-28.

Plaintiff then filed a complaint in this court seeking review of the then-final administrative decision. Tr. 986-89; *see Ashley v. Kijakazi*, 4:22-CV-75-M-RJ (filed July 11, 2022). On September 11, 2023, Chief United States District Judge Richard E. Myers II adopted the Memorandum and Recommendation of Magistrate Judge Robert Jones (*see* Tr.1006-20), ordering that this matter be remanded to the Commissioner for further proceedings. Tr. 1021-22. Judge Jones recommended remand (i) because ALJ Preston's "reliance on [Plaintiff's] ability to complete [activities of daily living ("ADLs")] such as "chores, taking her daughter to the park or beach, with a particular emphasis on driving, ignores [Plaintiff's] statements regarding the limited degree to which she could perform such activities" and (ii) for the Commissioner to consider additional evidence "in the form of an opinion from her physician John Callahan, M.D., of Vidant Family Medicine ("Dr. Callahan") dated March 14, 2022." Tr. 1013-14; 1016.

On May 29, 2024, a second administrative hearing was held before ALJ Wanda Wright (the "ALJ" or "ALJ Wright") at which Plaintiff, represented by counsel; VE Mike Demark; and Medical Expert, Joseph Malancharuvil, Ph.D. ("Dr. Malancharuvil"), appeared and testified. Tr. 902-75. A supplemental hearing was held on June 25, 2024, to allow for additional testimony from VE Demark. Tr. 848-901. On September 11, 2024, the ALJ issued a decision denying Plaintiff's request for benefits. Tr. 1050-78. Plaintiff then requested a review of the ALJ's decision by the Appeals Council, and on July 22, 2025, the Appeals Council declined to assume jurisdiction. Tr. 827-33. Plaintiff then filed her second complaint in this court seeking review of the final administrative decision. [DE-1].

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the

[Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520 and 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity ["SGA"]," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity ["RFC"] to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §§ 404.1520a(b)-(c) and §§ 416.920a(b)-(c). This

regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* §§ 404.1520a(e)(4), 416.920a(e)(4).

## IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Plaintiff "not disabled" as defined in the Act. Tr. 1070. At step one, the ALJ determined Plaintiff had not engaged in substantial gainful employment since October 21, 2019, the alleged onset date. Tr. 1056.

Next, at step two, the ALJ determined Plaintiff had the following severe impairments: diabetes; obesity; depression; anxiety with panic attacks; post-traumatic stress disorder ("PTSD"); bipolar; personality disorder; and substance abuse disorder (marijuana). Tr. 1056. The ALJ also found Plaintiff had the following non-severe impairments: cerebral vascular accident; high-grade squamous intraepithelial lesion, status-post loop electrosurgical excision procedure; menorrhagia and dysfunctional uterine bleeding, status-post endometrial ablation/NovaSure procedure and hysteroscopy with dilation and curettage; hyperlipidemia; hypertension; and vitamin D deficiency. Tr. 1056-57. Yet at step three, the ALJ concluded these impairments both physical and mental were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 1057.

Applying the technique prescribed by the regulations, the ALJ found that Plaintiff's mental

impairments have resulted in moderate limitation in understanding, remembering, or applying information; moderate limitation in interacting with others; moderate limitation in concentrating, persisting, or maintaining pace; and moderate limitation in adapting or managing oneself. Tr. 1059-60.

Prior to proceeding to step four, the ALJ assessed Plaintiff's RFC, finding Plaintiff had the ability to perform light work[1] with the following limitations:

> [She can] frequently handle and finger with the left upper extremity; can understand, remember, and carry out simple instructions; occasionally interact with coworkers and supervisors; occasionally interact with the general public; use judgement to make simple work-related decisions; occasionally deal with changes in a routine work setting; in a non-production rate pace with no assembly line work or quota based work; frequently balance, stoop, kneel, crouch, or crawl; frequently climb ramps or stairs; never climb ladders, ropes, or scaffolds; avoid concentrated exposure to unprotected heights, moving machinery, and hazardous machinery; and [be] off task 10% of the workday.

Tr. 1061.

In making this assessment, the ALJ found Plaintiff's statements about her limitations not entirely consistent with the medical evidence and other evidence in the record. Tr. 1062.

At step four, the ALJ concluded Plaintiff did not have any past relevant work. Tr. 1068.

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b), 416.967(b).

"Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a), 416.967(a); S.S.R. 96-9p, 1996 WL 374185, at *3 (July 2, 1996). "Occasionally" generally totals no more than about 2 hours of an 8-hour workday. S.S.R. 96-9p, 1996 WL 374185, at *3. "Sitting" generally totals about 6 hours of an 8-hour workday. *Id.* A full range of sedentary work includes all or substantially all of the approximately 200 unskilled sedentary occupations administratively noticed in 20 C.F.R. Part 404, Subpart P, Appendix 2, Table 1. *Id.*

Nonetheless, at step five, upon considering Plaintiff's age, education, work experience, and RFC, the ALJ determined there are jobs that exist in significant numbers in the national economy that the Plaintiff can perform. Tr. 1069-70.

## V. OVERVIEW OF PLAINTIFF'S CONTENTIONS

In this case, Plaintiff alleges the ALJ erred by (i) failing to fully abide by this court's and Appeals Council's instructions on remand and improperly relying on Plaintiff's ADLs to support her decision without considering evidence of the extent to which she could perform those activities; (ii) misapplying the relevant listings 20 C.F.R. Part 404, Subpart P, Appendix I, (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926); (iii) improperly discounting Dr. Callahan's opinion about Plaintiff's RFC; and (iv) failing to account for Plaintiff's "work attendance issues" in the RFC. Pl.'s Brief [DE-14] at 4, 6, 17-18.[2] Each will be discussed below.

## VI. DISCUSSION

### A. Remand instructions and reliance on ADLs

This court previously remanded this matter because ALJ Preston's "reliance on [Plaintiff's] ability to complete [activities of daily living ("ADLs")]" such as "chores, taking her daughter to the park or beach, with a particular emphasis on driving, ignores [Plaintiff's] statements regarding the limited degree to which she could perform such activities."[3] Tr. 1013-14.

ALJ Preston in her September 20, 2021 decision found that Plaintiff "displays abilities

---

[2] Except for citations to the Transcript of Proceedings ("Tr."), all citations to documents using the docket entry number [DE-] provided in the court's docket will specify the page number automatically assigned by the CM/ECF system, rather than the page number, if any, specified in the original document.

[3] The court also remanded this matter for the Commissioner to consider additional evidence in the form of Dr. Callahan's opinion dated March 14, 2022. Tr. 1016. Yet that issue is now moot as the ALJ considered Dr. Callahan's March 14, 2022 opinion. Tr. 1067.

inconsistent with the reported complete inability to work." Tr. 46. ALJ Preston specifically opined that:

> [Plaintiff] is independent with all essential activities of daily living; takes care of all her young daughter's needs, takes care of two dogs, prepares simple meals; does light household chores, including laundry and picking up toys outside; watches television; shops; goes to the park/beach; attends doctor appointments, family functions and school events; and drives a car. She can finish what she starts and is able to follow instructions . . . As it relates to driving, it is noted that driving an automobile for any distance requires sufficient concentration and mental skills to follow directions, read traffic signs, avoid routine road hazards, as well as appreciate and evaluate on-coming and same-directional traffic. It also requires significant physical abilities such as sitting in one place for a period of time, turning the steering wheel, and maneuvering one' s body in positions so as to see in all directions and angles, while simultaneously operating foot controls.

Tr. 46.

Judge Jones highlighted that with respect to her ADLs, Plaintiff "reported that doing light cleaning and picking up toys outside takes up most of her day" and that "she only drives within or 10 miles from home, she usually rides rather than drives, and she has to have someone in the car when she does drive to alleviate her anxiety." Tr. 1013.

Judge Jones found that remand was appropriate because "[t]he ALJ did not discuss [these qualifications and] the extent of the other activities she indicated [Plaintiff] could perform, . . . [including] shopping two times per month, and that [Plaintiff] cannot go out by herself." *Id.* (citing *Lewis v. Berryhill*, 858 F.3d 858, 869 (4th Cir. 2017) ("An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherrypick facts that support a finding of nondisability while ignoring evidence that points to a disability finding.").

Here, ALJ Wright found that although Plaintiff "contended that she had significant limitations with her activities of daily living, it is not supported by the evidence of record, which fails to note she reported such significant limitations." Tr. 1066. The ALJ summarized that

Plaintiff "was able to care for her young daughter, care for two dogs, prepare simple meals and do light household chores." *Id.* While the ALJ acknowledged that Plaintiff "reported some rough days," the ALJ qualified this finding with the observation that Plaintiff "had mostly normal mental status exams with no limitation noted in her ability to perform her ADLs." *Id.* The ALJ concluded that "considering both the type and extent of limitations in activities of daily living alleged (i.e. at hearing the claimant said she showers once per week and has difficulty getting her daughter's clothes ready for school), the [RFC] incorporates off task time of 10%." *Id.*

While the ALJ admittedly references at least two limitations in Plaintiff's ADLs, her decision still emphasizes "facts that support a finding of nondisability while ignoring evidence that points to a disability finding." *Lewis*, 858 F.3d at 869. The ALJ does not even discuss the limitations expressly referenced by this court on its previous remand, including Plaintiff's "taking the majority of the day to accomplish chores such as cleaning and picking up toys, and the limited extent of other activities, like shopping two times per month, and that [Plaintiff] cannot go out by herself." Tr. 1013. Additionally, with respect to caring for her young daughter, Plaintiff told a treating professional that "she has expressed to family that she needs assistance with her daughter at times, stating that she has asked her mother or sister to take her daughter 1x/month so '[she] can have a break.'" Tr. 1556. Similarly, at the May 29, 2024 administrative hearing before the ALJ, Plaintiff testified that she "rel[ies] on [her] child a little more than [she] should for things like that, trying to remember things." Tr. 918.

Similarly, in her September 11, 2024 written decision, the ALJ mentions Plaintiff's ability to "drive" and to "handle her own medical care" as examples of why her ability to concentrate, persist or maintain pace has only a moderate limitation. Tr. 1060. Yet the ALJ again fails to

mention Plaintiff's reports previously highlighted by this court "that she only drives within 5 or 10 miles from home, she usually rides rather than drives, and she has to have someone in the car when she does drive to alleviate her anxiety." Tr. 1013. Additionally, at the administrative hearing before the ALJ, Plaintiff testified that she experienced what she believed to be a seizure while she was driving and required her daughter to put her car in park. Tr. 934. Plaintiff also reported that her boyfriend would drive to the grocery store while she would not. Tr. 935.

With respect to Plaintiff's ability to "handle her own medical care," (Tr. 1060), the ALJ does not mention Plaintiff's testimony that she had been unable to establish medical care after her move and was off her medications "for seven months" because she has "had a hard time getting care established[,] . . . [b]ecause with that, comes along with having to go and talk to, like, Medicaid, and doctors, and stuff, and that's hard." Tr. 921, 939. Additionally, the ALJ did not mention Plaintiff's testimony regarding the intense deterioration of her condition during this period while she was not taking her medications, including that she "could just barely function" and that she had "lost about 65 pounds" in "about three months." Tr. 940.

The undersigned notes that "[i]f a symptom can be reasonably controlled by medication or treatment, it is not disabling." *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) (citing *Purdham v. Celebrezze*, 349 F.2d 828, 830 (4th Cir. 1965). Accordingly, the ALJ was entitled to consider Plaintiff's positive response to her medication regime while she was taking them. Yet an ALJ should "not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints." S.S.R. 16-3p. Here, the ALJ does

not discuss whether Plaintiff's recent failure to seek necessary medical care including medications is due to an exacerbation of her mental impairments.

The undersigned therefore recommends that this case be remanded to the Commissioner for further proceedings. On remand, the Commissioner should include a narrative discussion regarding the consistency of Plaintiff' s statements, including relevant limitations to her ADLs, in accordance with applicable law. To be clear, the undersigned expresses no opinion as to the consistency of Plaintiff's statements, or whether Plaintiff does or does not require additional limitations based upon the medical and other evidence. It is, of course, up to the Commissioner to determine what weight to give all evidence. It will be incumbent on the ALJ to consider all of the evidence before her, and to explain her findings accordingly, so as to permit meaningful review by the court if necessary.

**B. Application of Listings**

In challenging the ALJ's determination that Plaintiff does not meet the Paragraph B or C criteria, Plaintiff argues "[t]he pertinent evidence in this record, including medical records and testimony, demonstrates that [Plaintiff] has at least marked difficulties in at least four of the relevant Listings' B Criteria." Pl.'s Brief [DE-14] at 9.

The paragraph B criteria includes the following four areas of mental functioning: (i) understand, remember, or apply information; (ii) interact with others; (iii) concentrate, persist, or maintain pace; and (iv) adapt or manage oneself. 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00E (1-4). A claimant has a "marked limitation" when his or her "functioning in [an] area independently, appropriately, effectively, and on a sustained basis is seriously limited." 20 C.F.R. Part 404, Subpart P, App. 1, 12.00.F.2. A claimant has an "extreme limitation" when he or she is

"not able to function in [an] area independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. Part 404, Subpart P, App. 1, 12.00.F.2.

In light of the above recommendation that this case be remanded to the Commissioner, and as the findings on remand may be substantially different, the undersigned does not make a recommendation regarding Plaintiff's arguments on the ALJ's discussion of the paragraph B criteria. On remand, however, the ALJ should consider Plaintiff's argument here. Pl.'s Brief [DE-14] at 6-14. The ALJ should also consider whether additional explanation is necessary regarding the findings as to the relevant Listings. Without an adequate explanation of the ALJ's findings, the court is left to guess about how the ALJ arrived at his conclusions, and meaningful review is frustrated. *Mascio v. Colvin*, 780 F.3d 632, 637 (4th Cir. 2015).

**C. Medical Opinions**

The ALJ considered Dr. Callahan's opinion that Plaintiff "could attend training classes for [one]-half day; sit, stand, bend, lift, carry, and walk for one-quarter of day; needs frequent position changes; and is not a candidate for vocational rehabilitation." Tr. 1067. The ALJ found this opinion unpersuasive because:

> Dr. Callahan provides no support for such significant limitations other than noting [Plaintiff] has a history of seizures, bipolar, and anxiety and has left lower extremity and difficulty managing stress. His own treatment notes show the claimant had not been seen by him or at his facility except for one visit to establish care the prior summer. He specifically states that he had completed the form based on the patient's reports of limitations with activity . . . . Therefore, the opinion cannot be said to be supported by any objective findings.

Tr. 1067 (internal citations omitted).

Plaintiff argues that the ALJ improperly "discounts Dr. Callahan's opinion about [Plaintiff's RFC] based on the [ALJ's] misleading statement about Dr. Callahan's treatment

relationship with [Plaintiff].” Pl.’s Brief [DE-14] at 17. Plaintiff claims that “Dr. Callahan had access to his colleague Dr. Braus’ examination notes on July 8, 2021, and on November 16, 2021. *Id.* (citing Tr. 1605, 1607, 1608, 1615). Plaintiff contends that “[t]his is much more actual contact with [Plaintiff] than Dr. Malancharuvil ever had.” *Id.* Plaintiff posits that “[t]here is no evidence in this record that the latter ever met with, examined or even spoke with [Plaintiff].” *Id.*

In his March 14, 2022 notes, Dr. Callahan provides that the appointment represents Plaintiff’s “first visit with [him] or this practice as a patient other than to see Dr. Brous as an establishing care visit last summer.” Tr. 1605. This language does not suggest that Dr. Callahan claims to have a longitudinal perspective of Plaintiff’s medical impairments, notwithstanding the fact that he also appears to have reviewed Plaintiff’s mammogram results from November 2021. Tr. 1605-07. It also appears that Dr. Callahan based his understanding on Plaintiff’s limitations on her subjective reports to him rather than on any clinical observations. *See, e,g.*, Tr. 1605 (“[Plaintiff] notes anxiety limits her ability to handle stress.”). This can indeed be appropriate for symptoms that do not readily manifest in objective laboratory findings or clinical observations. *Arakas v. Commissioner*, 983 F.3d 83, 97 (4th Cir. 2020) (“ALJs may not rely on objective medical evidence (or the lack thereof)—even as just one of multiple factors—to discount a claimant’s subjective complaints regarding symptoms of . . . disease that does not produce such evidence.”). Yet with such conditions, it is important to “consider a longitudinal record whenever possible.” *Id.* at 101 (quoting 2012 SSR LEXIS 1, 2012 WL 3104869, at *6 (July 25, 2012)).

Dr. Malancharuvil testified that he reviewed Plaintiff’s entire medical record in forming his opinion. Tr. 945. There is no indication that Dr. Callahan had access to or reviewed even close to this volume of Plaintiff’s medical records in preparing his opinion. Accordingly, the

undersigned finds that Plaintiff's arguments related to the ALJ's consideration of Dr. Callahan's medical opinion are without merit.

**D. Work Absenteeism**

Plaintiff argues the ALJ failed to account for "work attendance issues" in the RFC. Pl.'s Brief [DE-14] at 18. Plaintiff argues the ALJ failed to address Plaintiff's testimony that her PTSD led to frequent work absences. *Id.* (quoting Tr. 936). Plaintiff points to her testimony at the administrative hearing that she has been terminated from previous employment for excessive work absences resulting from her symptoms. *Id.* (quoting Tr. 936). Plaintiff also notes an appointment summary from October 31, 2019, where her treatment plan included "[Plaintiff] is not permitted to return to work at this time." Tr. 763. While Plaintiff says she has "2 or 3 'bad days' a week when [she] just totally shuts down due to her mental disabilities," (Pl.'s Brief [DE-14] at 18 (citing Tr. 80)), the testimony Plaintiff cites reads "I'll usually have two or three *good* days a week" (Tr. 80 (emphasis added)).

In response, the Commissioner argues "such underdeveloped arguments rely entirely on Plaintiff's statements regarding absenteeism, and one nonspecific medical note from November 2019 in which Plaintiff's provider declined to release her to work at that time." [DE-16] at 18. The Commissioner also states "this was shortly after Plaintiff complained of stroke-like symptoms with left arm weakness, which corresponds with her alleged onset date" and that a "post-hospital follow-up found that Plaintiff's objective findings were different than one would expect with her complaints, and concluded both that she should not drive or operate machinery, and could not return to work at this time." *Id.* at n.5 (citations and quotations omitted).

A claimant's RFC represents the most she can still do despite her limitations. *See Mascio*,

780 F.3d at 635. It must be based on all the relevant evidence in the case record and should account for all of the claimant's medically-determinable impairments. *See id.* Evidence relevant to the RFC assessment includes "[e]ffects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." SSR 96-8p, 1996 SSR LEXIS 5, at *5 (S.S.A. July 2, 1996).

Here, Plaintiff testified her symptoms include "panic attacks and it can cause [her] to shut down for hours at a time" and "[Plaintiff] spends most of that time shut in [her] home with [the] doors locks, [] windows shuts in order to try to feel safe." Tr. 919. Plaintiff also testified she was not able to hold down a job because her symptoms lead her to call out of work once or twice a week. *Id*. at 936. The VE testified that more than one absence per month would be work preclusive. *Id.* at 1372.

In reviewing the RFC, "the Court may not 'reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ].'" *Traci R. v. Bisignano*, No. 3:25-cv-54, 2026 U.S. Dist. LEXIS 65294, at *25 (E.D. Va. Mar. 26, 2026) (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)). The ALJ, however, was required to take the potential for Plaintiff's symptoms to cause absenteeism into account when determining Plaintiff's RFC. *See Peeler v. Comm'r of SSA*, No. 9:19-cv-03199, 2021 U.S. Dist. LEXIS 261984, at *22 (D.S.C. Mar. 16, 2021) (finding the ALJ erred by not accounting for absenteeism caused by Plaintiff's symptoms in the RFC); *Besaw v. Kijakazi*, No. 1:23-cv-00001, 2023 U.S. Dist. LEXIS 217298, at *9-11 (W.D.N.C. Dec. 5, 2023) (finding the ALJ erred by failing to discuss a limitation for absenteeism in light of Plaintiff's gastrointestinal symptoms).

The ALJ incorporated 10% time off task into the RFC in consideration of the extent of

limitations on some of Plaintiff's ADLs. Tr. 1066. Yet, the ALJ did not discuss absenteeism in her decision nor how the RFC accounted for Plaintiff's testimony that Plaintiff lost prior employment due to missing work because of her symptoms. Accordingly, REMAND is RECOMMENDED on this issue.

To be clear, the undersigned expresses no opinion as to the consistency of Plaintiff's statements, or whether Plaintiff does or does not require additional limitations based on absenteeism. It is, of course, up to the Commissioner to determine what weight to give all evidence. It will be incumbent on the ALJ to consider all of the evidence before her, and to explain his findings accordingly, so as to permit meaningful review by the court if necessary.

## VII. CONCLUSION

For the reasons stated above, IT IS RECOMMENDED that Plaintiff's brief [DE-14] be ALLOWED, Defendant's brief [DE-16] be DENIED, and the case be REMANDED to the Commissioner for further proceedings consistent with the Memorandum and Recommendation.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until **September 11, 2026**, to file written objections to this Memorandum and Recommendation. The presiding district judge must conduct her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C. Any response to objections shall be filed by the **earlier**

**of 7 days from the filing of the objections, or September 18, 2026**.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).**

Submitted, this 4th day of September, 2026.

Brian S. Meyers
United States Magistrate Judge